# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NED LEE MOTON,**

    Plaintiff,

  v.                                    Case No. 17-CV-178

**PARK PLACE HOSPITALITY LLC,**

    Defendant.

## DECISION AND ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Ned Lee Moton brought this *pro se* civil rights complaint against his former employer, Park Place Hospitality LLC ("Park Place"), alleging that Park Place discriminated against him on the basis of race and age. (Docket # 5.) Park Place filed a motion for summary judgment (Docket # 35), to which Moton responded (Docket # 43). For the reasons below, Park Place's motion will be granted.

### BACKGROUND FACTS

Under Civil Local Rule 56(b)(2), Moton was required to file (i) a concise response to Park Place's statement of facts followed by a response to each paragraph including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon, and (ii) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to supporting materials. Park Place included these instructions in its motion for summary judgment (Docket # 35 at 5) as required by Civ. L.R. 56(a)(1)(B). The motion also included the text of Federal Rule of Civil Procedure 56(e), notifying Moton that

if he failed to properly address another party's assertion of fact, the court would be entitled to consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it. (Docket # 35 at 4.) Despite these instructions, Moton did not properly respond to Park Place's statement of proposed facts. Thus, I consider Park Place's proposed findings of fact undisputed for purposes of this motion.

Park Place owns and operates the Hilton Garden Inn Park Place (the "Hotel") located in Milwaukee, Wisconsin. (Def.'s Proposed Findings of Fact ("DPFOF") ¶ 1.) The Hotel maintains 184 guest rooms, as well as a restaurant and bar and roughly 5,000 square feet of event space. (*Id.* ¶ 2.) In June 2006, Moton began his employment at the Hotel as a van driver. (*Id.* ¶ 3.) This position was part-time and Moton initially worked three and a half hours per day, which was reduced to two and half hours per day for the majority of his employment. (*Id.* ¶ 4.) At the time of his hire, Moton was approximately sixty years old. (*Id.* ¶ 5.) Moton's sole responsibility was to operate the company-owned vehicle to transport hotel guests. (*Id.* ¶ 6.) At all times relevant to Moton's employment, Park Place had a "Use and Care of Hotel Vehicles" policy which provided that "[a]nyone who operates a commercially licensed vehicle (van) owned or controlled by the Hotel must possess a valid driver's license and have a clean driving record." (*Id.* ¶ 7.) Moton was aware of this policy; he read, signed, and reviewed the policy on December 20, 2012. (*Id.* ¶ 8.)

On April 15, 2013, the City of Milwaukee Municipal Court found Moton guilty of Operating While Intoxicated ("OWI"). (*Id.* ¶ 9.) As a result of the OWI conviction, Moton's license and driving privileges were initially revoked on April 15, 2013. (*Id.* ¶ 10.) A month later, his revocation was amended to a suspension. (*Id.* ¶ 11.) Moton never disclosed that his

license was revoked or suspended to Park Place despite the requirement that he have a valid driver's license as a condition of his position. (*Id.* ¶ 12.) Rather, Moton continued to drive the Hotel van on a revoked and/or suspended license. (*Id.* ¶ 13.) Moton was aware that this was in violation of the "Use and Care of Hotel Vehicles" policy. (*Id.* ¶ 14.)

As part of an annual renewal process for its insurance coverage, Park Place's insurance provider conducted an audit of employee driving records for employees who may have operated the hotel-owned van. (*Id.* ¶ 15.) Pursuant to the insurance company's guidelines, Park Place would not meet the underwriting requirements if any of its drivers had one or more "major violations" within the past five years, including but not limited to driving while intoxicated or impaired under the influence of drugs ("DWI"). (*Id.* ¶ 16.) Any employee who committed a major violation, or otherwise failed to comply with the insurance guidelines, would be excluded from coverage. (*Id.* ¶ 17.) Park Place submitted a list of drivers to the insurance company, among whom were Moton, as the official van driver, and other hotel employees who may have assisted in driving the van as needed. (*Id.* ¶ 18.) Following its audit, the insurance carrier notified Park Place's Chief Financial Officer, Nanci Bahlmann, that two employees—Ned Moton and Nicholas Toecker—did not meet the underwriting criteria and would be excluded from coverage. (*Id.* ¶ 19.) Toecker, a 25-year old white male, was employed by Park Place as a front desk receptionist. (*Id.* ¶ 20.) Toecker, along with other hotel employees and staff, occasionally drove the van when Moton was not working. (*Id.* ¶ 21.) As a result of not meeting the underwriting criteria, Toecker was prohibited from assisting with or otherwise operating the Hotel van. (*Id.* ¶ 22.) Moton admits that driving the van was not Toecker's principal job duty and that Moton was the only van driver for the Hotel. (*Id.* ¶ 23.)

Following receipt of the insurance carrier's audit, Hotel management met with Moton on October 11, 2013 to discuss the information received from the carrier. (*Id.* ¶ 24.) Management advised Moton that its insurer identified him as having a major driving violation and that the carrier would not insure Moton as a driver because of his OWI and suspension of his license. (*Id.* ¶ 25.) Moton acknowledged in this meeting that he lost his license due to an OWI. (*Id.* ¶ 26.) Management explained to Moton that he could not operate the hotel van because he no longer had a valid driver's license and he was uninsurable. (*Id.* ¶ 27.) Moton apologized, turned in his timecard, said goodbye, and left the property. (*Id.* ¶ 29.)

It is the Hotel's position that Moton was advised that management was looking for help in other departments, such as banquet, housekeeping and the dishwashing area, but Moton never responded to this offer. (DPFOF ¶ 28.) The Hotel's chief engineer, David Christensen, stated that he was in the meeting of October 11, 2013 and that Moton was advised of these other potential positions. (Decl. of David Christensen ¶¶ 2–3, 7, Docket # 39.) Although Moton disputes that alternative positions were offered to him (Resp. at 1–2, Docket # 43.), he does not point to any admissible evidence to support this assertion.

Moton's employment was officially terminated on October 17, 2013 following Park Place's receipt of documentation from the Department of Workforce Development ("DWD") Unemployment Division on behalf of Moton concerning unemployment compensation. (DPFOF ¶ 31.) Moton's employment as the van driver was terminated because he did not have a clean driving record and the insurance carrier would not cover him as a driver. (*Id.* ¶ 32.)

Moton never complained during his employment at the Hotel that he felt that he was being discriminated against on the basis of his age or race. (*Id.* ¶ 33.) In support of his claims of race and age discrimination, the sole fact Moton relies on is that Toecker—a much younger white male—was not terminated. (*Id.* ¶¶ 34–35.) Moton admits he has no evidence that Park Place considered his race or age when it discharged him. (*Id.* ¶ 36.) Moton admits that he has no facts to support his race and age discrimination claims other than that he is an African American male in his 60s and Toecker is a white male in his 20s. (*Id.* ¶ 37.)

In July 2014, Moton filed an administrative charge with the DWD, asserting a claim of age and race discrimination in connection with his termination from the Hotel. (*Id.* ¶ 38.) On October 20, 2014, the DWD issued a determination against Moton, dismissing his administrative charge and finding no probable cause to support his claims. (*Id.* ¶ 39.) Moton appealed this Initial Determination and the matter proceeding to hearing in November 2015 before an Administrative Law Judge ("ALJ"), at which the parties presented witnesses and other evidence. (*Id.* ¶ 40.) On November 17, 2015, the ALJ issued a Decision on Probable Cause finding that Moton failed to meet his burden and establish probable cause that Park Place considered Moton's race or age when it terminated his employment. (*Id.* ¶ 41.) Moton appealed this dismissal on December 7, 2015. (*Id.* ¶ 42.) This appeal was also unsuccessful and Moton filed a Complaint for Administrative Review in the Circuit Court of Milwaukee County on June 13, 2016. (*Id.* ¶ 43.) Moton's original administrative filing had been cross-filed with the Equal Employment Opportunity Commission ("EEOC"), which on November 7, 2016 issued a Notice of Dismissal and Right to Sue, adopting the findings of the DWD. (*Id.* ¶ 44.) On February 7, 2017, Moton filed this case. (*Id.* ¶ 45.)

# SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Park Place argues that it is entitled to summary judgment because, considering the evidence as a whole, no rational juror could conclude that Moton's race or age was the cause of his termination. (Docket # 36 at 5–11 (citing *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760 (7th Cir. 2016)).) Moton responds that Park Place's assertion that it offered him alternative positions when it discharged him is untrue. (Resp. at 1, Docket # 43.) Moton also argues that the fact that Toecker was allowed to keep his job after losing his license is evidence that Moton was discriminated against based on race and age. (*Id.* at 2–3.) Moton argues that "if you treat one (1) employee a certain way, you have to treat your other employees the same." (*Id.* at 3.)

Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, prohibits employment discrimination based upon race, color, religion, sex, or national origin. To survive summary judgment on a Title VII racial discrimination claim, a plaintiff must show that the evidence, considered as a whole, would permit a reasonable factfinder to conclude that the plaintiff's race caused the discharge. *See Ortiz*, 834 F. 3d at 765. Similarly, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C § 621 *et seq.*, forbids employment discrimination on the basis of age. 29 U.S.C. § 623(a)(1). In order to survive summary judgment on an age discrimination claim, the plaintiff must show that a reasonable juror could find that age was the "but-for" cause of the challenged adverse employment action. *See Gross v. FBL Fin. Serv.*, 557 U.S. 167, 180 (2009).

Moton is African American and was indisputably over forty years old at the time of his discharge by Park Place. However, on the present record, no reasonable factfinder would conclude that race or age caused or was a factor in Moton's discharge. In his deposition,

Moton agreed that the reason for his termination was his OWI conviction. (Dep. of Ned L. Moton at 11:18–25, Decl. of David J. Hanus, Docket # 40-2.) Moton admitted that the only fact he could point to for support of his discrimination claims was the Hotel's disparate treatment of himself and Toecker. (*Id.* at 19:20–20:21.) But to the extent Moton and Toecker were similarly situated, they were treated identically: both had unclean driving records and were rejected by the insurance underwriter, so both were forbidden from driving the van. Moton misses the crucial distinction between himself and Toecker: Moton's inability to drive the hotel van left him unable to perform his job, while Toecker's inability to drive the van did not significantly impair his ability to do his job. No rational factfinder would conclude that Moton would have kept his job as a van driver had he been younger or white, or that these factors had any role whatsoever in the decision to discharge him.

Moton's ongoing objection to Park Place's assertion that it offered him alternative employment is irrelevant, as is Moton's alleged good-faith belief that his occupational license allowed him to continue to operate the Hotel van. Even if Park Place did not offer Moton any other positions, and even if Moton never intended to conceal relevant information from his employer, there would still be no evidence that race or age played a role in his discharge and therefore no basis for liability under either Title VII or the ADEA.

Because there is no evidence that race or age was a factor in the decision to terminate Moton's employment, Park Place is entitled to summary judgment on Moton's discrimination claims.

**NOW, THEREFORE, IT IS ORDERED** that Park Place's motion for summary judgment (Docket # 35) is **GRANTED**.

**IT IS FURTHER ORDERED** that the clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 24th day of March, 2020.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge